GEORGE BURDETT *vs.* BURRAGE B. YALE & others.

Under a contract " to devote my time and best energies from daylight in the morning until nine o'clock in the evening to A. for the term of one year," for a stipulated sum by the day, with a provision that the wages shall continue the same until the expiration of the term, in case of the previous death of A., the performance of reasonable services, after the death of A. within the term, upon the request of his executors, is a condition precedent to the right to recover wages after such request.

CONTRACT against the executors of Burrage Yale, upon the following agreement:

" South Reading, May 1, 1860.

" To whom it may concern. — I, George Burdett, do obligate myself to devote my time and best energies from daylight in the morning until nine o'clock in the evening to Burrage Yale for the term of one year, with the exception of half an hour for breakfast, one hour for dinner, and half an hour for supper, and the Sabbath school upon the Sabbath; for which the said Yale is to pay the said Burdett one dollar and twenty-five cents per day, and furnish him with a tenement in the east part of the Prentice House, so called, comprising the rooms upon the first and second floors, the rent to be free, and have a reasonable share of the produce of the garden, and furnish him with his horse and wagon and men, to move the goods of the said Burdett from where he now resides to the above named place, free of expense. The said Yale further agrees that, in case of his decease before the expiration of the said term, the wages of the said Burdett shall continue the same until the term expires. And it is further agreed that the wages of said Burdett commence when the said Burdett takes possession of the above named tenement. The said Yale further agrees that the wages of the said Burdett shall be paid upon the last working day of each month. And it is also further agreed by the said parties that, in case of either of the said parties becoming dissatisfied, the one so being shall give the other three months notice, and at the expiration of said notice the contract shall become null and void.

" In witness whereof we have hereunto set our hands and seals this eleventh day of May in the year of our Lord one thou sand eight hundred and sixty. " Burrage Yale.

" George Burdett."

It was agreed in the superior court that the agreement was duly executed " on the day of its date," and that Yale died on the 2d of September following. Immediately after the funeral, the plaintiff gave notice to the agent of the defendants that he should do no more work under the contract, but should expect his pay to go on. The agent replied that the executors would expect him to continue work, if he was to be paid; and they afterwards gave to him a formal notice, that they would avail

themselves of the provisions of the contract for the termination of the same, and that one of them would give directions, if he wished to continue labor during the time of said notice. The plaintiff refused to do any more labor, and the executors have paid him up to the day after the funeral, and allowed him to occupy the tenement mentioned in the agreement free of rent through the year. Certain other facts respecting the duties which were performed by the plaintiff were agreed upon, if material, and are sufficiently stated in the opinion.

Upon these facts, *Vose*, J., rendered judgment for the defendants, and the plaintiff appealed to this court.

*S. G. Nash*, for the plaintiff.

*G. M. Brooks*, for the defendants.

CHAPMAN, J.* The decision of this case must depend exclusively upon the construction to be given to the contract declared on. The language of the plaintiff's promise is, " to devote my time and best energies from daylight in the morning until nine o'clock in the evening to Burrage Yale for the term of one year, with the exception of half an hour for breakfast, one hour for dinner, and half an hour for supper, and the Sabbath school upon the Sabbath."

It is contended, on behalf of the plaintiff, that this language imports merely that he would render services to the person of Yale; and consequently that when Yale died, and this species of service ceased of necessity, he was not bound to render any further service, but was entitled to have his wages continued without doing anything more. This consequence must follow, if this construction of the language is right.

But to devote one's time and best energies to a man, taken by itself, includes devotion to any of his reasonable business; and the terms might be fully satisfied without any service to his person, if such service should not be required by him. Doing his work and managing his affairs may, with propriety and accuracy, be called devoting time and energy to him. It appears that he was sick; but if he had so far recovered his health

---

* HOAR, J. did not sit in this case.

in the course of one or two months as to be able to go to Europe, and had gone there, and left the plaintiff in charge of his affairs, it would have been palpably absurd to say that the plaintiff did not remain under the obligation of this contract ; or that he might refuse to attend to the business, and yet recover his wages.

If we look into other parts of the contract, we find nothing to modify this portion of it. The compensation was to be one dollar and twenty-five cents per day, payable monthly, the use of a house for his family, and a portion of the produce of the garden. The term of service was one year, with the right in either party to terminate it by giving three months' notice. No inference can be drawn from any of these provisions. But the plaintiff relies on the following clause, as aiding his construction : " The said Yale further agrees that, in case of his decease before the expiration of the said term, the wages of the said Burdett shall continue the same until the term expires." This language does not, however, taken by itself, import that no further service is to be rendered. Nor is it entitled to this construction by the inference that if such was not its intent it is absurd or. useless. Its object may h'ave been to remove all possible doubt in respect to the right of the plaintiff to remain after the death of Yale, or to deprive the executors of the right to terminate the contract by giving the three months' notice. And this view is strengthened by the consideration that, though the contract was drawn up by an intelligent person, it was evidently not drawn by a person skilled in the law. And it must be supposed that if the parties had agreed upon so unusual a stipulation as that all obligation to labor ceased, they would have expressed it.

Certain facts are stated which are relied on by the plaintiff as favorable to his construction of the contract. Irrespective of all objection to the admissibility of such evidence for such a purpose, we do not think the facts have such tendency. The principal facts are, that, with two exceptions, which do not appear to be material, the sole occupation of the plaintiff, during Yale's life, was in taking personal care of him, and in taking care of the horse and carriage in which he was accustomed to ride, and keeping an account of the family expenses. But this is not

exclusive devotion to his person; and certainly the horse and carriage would need care after his death, as much as before.

The plaintiff's agreement, then, was not limited to personal services, which, from the nature of the case, must cease at Yale's death, but included other reasonable labor and service, and the right to require its continued fulfilment passed to the executors, as in ordinary cases of contracts for labor during a stipulated term, and the performance of the service was a condition precedent to the right to demand wages.

*Judgment for the defendants affirmed.*